**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**INTERNATIONAL MARINE RESEARCH**
**INSTITUTE, INC.,**

      **Plaintiff,**

-vs-                 **Case No. 6:05-cv-626-Orl-31JGG**

**JOHN H. RUMPEL,**

      **Defendant.**

_____

## MEMORANDUM OPINION

Plaintiff International Marine Research Institute, Inc. ("IMRI"), filed a three-count Amended Complaint (Doc. 6) in this Court on May 9, 2005, seeking declaratory relief. Defendant John Rumpel ("Rumpel") then filed three counterclaims against IMRI, seeking monetary relief. (Doc. 18). IMRI's Motion for Summary Judgment (Doc. 46) was granted with regard to Count I of the Amended Complaint. (See this Court's Order of June 9, 2006, filed at Doc. 87). Count II was dismissed with prejudice. A bench trial was held on December 21, 2006, to address Count III and Defendant's Counterclaims.

**I. Background**

IMRI was a charity that worked with women and children in Belize teaching them skills, such as fixing boats, sailing, and using boats to make a living fishing. (Roden Depo. at 14). Rachel's Children International ("Rachel's") is a sister charity to IMRI, that was owned and operated by the same individuals. IMRI was dissolved sometime in 2005. Marilyn Roden

("Roden") was the executive director of IMRI until January 2005. (Roden Dep. at 12). Roden kept records of boats donated to IMRI. (Roden Depo. at 39).

Around November 2003, James Scott ("Scott") contacted Rumpel in connection with Scott's work for IMRI.[1] (Trial Tr. at 89-90). Scott told Rumpel that a previous donor, Dr. Robert E. Darnaby ("Darnaby"), had offered to donate a 53' Carver vessel[2] to the charity, but only in exchange for $300,000 bargain sale cash. (Trial Tr. at 90-91). Scott asked Rumpel to loan $300,000 to IMRI so that IMRI could obtain the 53' Carver vessel. (Trial Tr. at 91). Rumpel traveled to Hilton Head, SC, looked at the vessel and agreed to make the loan. (Trial Tr. at 92-93, 99). Scott advised Rumpel that the loan would be repaid in a couple of months. (Trial Tr. at 121-22).

Rumpel later proposed that IMRI then trade the 53' Carver vessel to Rumpel in an even exchange for his 48' Ocean vessel. (Trial Tr. at 99). Thereafter, Rumpel received a document signed on behalf of Rachel's acknowledging his $300,000 loan and granting him a lien "against any and all assets charity may liquidate." (Trial Pl. Ex. 11). IMRI concedes that IMRI, not Rachel's, received the $300,000 loan. (Doc. No. 46 at 10). Rumpel also received a Bill of Sale signed on behalf of IMRI reflecting a trade of the Vessel Victoria, a 48' Ocean Vessel, for the

---

[1]Scott's relationship with IMRI is unclear, however, Scott terms himself a "consultant" to IMRI. (Trial Tr. at 33). Both parties agree that Scott and Rumpel were friends long before this transaction and that Scott worked in the same building that IMRI's Florida office was housed in.

[2]There are two vessels at issue in this case. The sworn statements and documents submitted to the Court refer to the two vessels by various names. For purposes of this opinion, references to the Vessel Victoria and the 48' Ocean vessel refer to the vessel with Official Number 955331, and references to the Vessel Dock- Ter's Haven, the Dock-Ter's Haven, the 53' Carver vessel, and the 53' Carver S30 Voyager-Pilothouse, all refer to the vessel with Official Number 1114341.

Vessel Dock-Ter's Haven, a 53' Carver S30 Voyager-Pilothouse. (Trial Def. Ex. 3). The Bill of Sale reflects that Rumpel traded and transferred all of his rights in the Vessel Victoria to IMRI, and that IMRI traded the Vessel Dock-Ter's Haven for the Vessel Victoria. The Bill of Sale provides as follows:

> Owner of the vessel described below [Vessel Dock-Ters Haven], is hereby trades [sic.] for above vessel [Vessel Victoria] which transfers all rights, title and interest together with all gear, equipment and necessaries appertaining to said vessel as to John H. Rumpel, for no other interests, considerations, monies, or the like.

(Trial Def. Ex. 3).

A Deed of Gift dated December 14, 2003, signed by Darnaby, reflects that Darnaby transferred the Vessel Dock-Ter's Haven, Official Number 1114341 to IMRI. (Trial Def. Ex. 9). A second Deed of Gift dated December 14, 2003, purportedly signed by Rumpel[3], reflects that Rumpel transferred the Vessel Victoria, Official Number 955331, to IMRI for "Consideration Received: None (Even Trade)." (Trial Pl. Ex. 12). Both deeds of gift provide as follows:

> Vessel is sold free and clear of all liens, mortgages, and other encumbrances of any kind and nature, except as stated on the reverse hereof.

(Trial Pl. Ex. 12; Trial Def. Ex. 9). None of the deeds of gift contain any provisions on the reverse side of the document. On December 22, 2003, Rumpel provided IMRI with a cashier's check in the amount of $300,000. (Trial Def. Ex. 2).

Rumpel avers that he "did not sign a deed of gift for the motor vessel Victoria, period." (Trial Tr. at 106-7). He further states that either the signature on the Deed of Gift is not his or that the document has been altered. (Trial Tr. at 106-08). Scott admits that he never actually saw

---

[3]Rumpel denies having signed this document and the attestation by Roden is not worthy of belief.

Rumpel sign the deed of gift. (Trial Tr. at 76-78). However, Roden notarized the document and testified in her deposition that Rumpel signed the Deed of Gift in her presence. (Roden Depo. at 65). At trial, Scott testified that Roden regularly notarized signatures that were made outside of her presence, which he believed she could do as long as she had a copy of the signator's driver's license. (Trial Tr. at 69, 71). Scott's testimony is supported by the fact that Roden often notarized documents signed by Russell Thomas while he was in Belize and she was in Florida. (Trial Tr. at 69-70). Furthermore, Roden admitted that she notarized Dr. Darnaby's signature, even though she never met him. (Roden Depo. at 41-42). This, of course, seriously calls into question Roden's credibility and supports Rumpel's argument that he did not sign the Deed of Gift.

In August or September 2004, IMRI sent Rumpel a Revised Invoice for dockage and insurance on the Vessel Victoria for the period January through August 2004, in the amount of $3,871.62. (Trial Def. Ex. 7). Scott wrote on the bottom of the document, "if you guys wish make a donation to Rachel's Children International, Inc. instead – for a write off." (Trial Def. Ex. 7; Scott Depo. at 164). Nobody was able to explain why Rumpel was sent this bill when he no longer owned the Vessel Victoria. (Trial Tr. At 80; Roden Depo. At 73).

Toward the end of 2004, Rumpel made verbal requests for repayment of the $300,000 loan, but no payment was received. (Trial Tr. at 122). In January 2005, he recorded a Notice of Claim of Lien in the amount of $300,000 with the Coast Guard to provide notice that he was granted a lien on the Vessel Victoria. (Trial Tr. at 123; Def. Ex. 16). On June 6, 2005, Rumpel's attorney sent a written demand for repayment of the loan to IMRI. (Trial Pl. Ex. 8).

In February 2005, Rumpel traded the 53' Carver for a new boat. (Trial Tr. at 132-33). Before the trade, he spent approximately $30,000 in repairs and modifications on the 53' Carver. He received a trade credit of between $325,000 and $350,000 for the 53' Carver. (Trial Tr. at 133).

On May 3, 2005, IMRI sold the Vessel Victoria to Eugene J. Vinci. (Vinci Depo. at 8-11, 30-31). IMRI sold the vessel pursuant to a warranty that the vessel was free and clear of all liens, mortgages, and other encumbrances. (Doc. No. 16-2). Vinci, as purchaser of the Vessel Victoria, demanded that IMRI defend the notice of claim of lien filed against that vessel. (Doc. No. 16-2). It appears that IMRI holds $27,000 in escrow from the sale of the Vessel Victoria pending the Court's decision on Rumpel's Notices of Claim of Lien. (Doc. No. 43-2 at 5).

Thomas, President of IMRI, denies any knowledge of the transactions with Rumpel, Darnaby or Vinci. (Thomas Depo. at 34-35, 38). However, Thomas' signature appears on several documents related to or mentioning these transactions. The documents are notarized by Roden, however, as previously discussed, there is no way to tell if Thomas actually signed the documents or not. Also, some documents are stamped with Thomas' signature stamp, which he allowed Roden to use. (Thomas Depo. at 66).

## II. Legal Analysis

### *A) Count III of Plaintiff's Amended Complaint*

In Count Three, IMRI seeks a declaratory judgment as follows: (1) that Rumpel is not entitled to a maritime lien for any goods, services or money advanced as claimed in the three Notices of Claim of Lien; (2) that Rumpel exchanged the Vessel Victoria, along with $300,000, to acquire the 53' Carver as "an even trade"; and (3) that Rumpel is liable to IMRI for slandering title to the Vessel Victoria. This Court has already ruled that Rumpel does not have any maritime lien

against the Vessel Victoria. (See Doc. 82; Doc. 87). Therefore, the Court turns to the other two issues addressed by Count III.

First, this Court finds that there is insufficient evidence to show that Rumpel forgave the $300,000 loan when he traded the Vessel Victoria for the 53' Carver. The evidence clearly establishes that Rumpel loaned $300,000 to IMRI so that IMRI could purchase the 53' Carver and that all parties expected that IMRI would pay Rumpel back within a few months. However, there is no evidence that Rumpel ever forgave this loan. IMRI argues that the Deed of Gift, which states that the Vessel Victoria is given free and clear of all liens to IMRI, supports its argument that the loan was forgiven. However, this argument is wholly unpersuasive.

Rumpel denies ever signing a deed of gift, and the only testimony that would suggest otherwise is the deposition testimony of Roden. However, Roden's credibility is at best questionable. Furthermore, there is a Bill of Sale, which all parties admit to signing, indicating that the 53' Carver was traded to Rumpel for the Vessel Victoria and "no other interests, considerations, monies or the like." In light of the all the evidence, this Court finds IMRI's claim that Rumpel forgave the $300,000 loan simply not credible.

With regard to the issue of slander, it appears that Plaintiff has abandoned this claim. Plaintiff has presented no argument or evidence in support of this claim whatsoever. Therefore, the issue of slander must be decided in Defendant's favor as well.

*B) Counterclaims I-III*

Counterclaim I seeks reformation of a promissory note so that every mention of Rachel's is replaced with IMRI. In the Joint Pre-trial Statement, IMRI agrees to this reformation. (Doc. 93 at 6). Therefore, Counterclaim I is resolved in Defendant's favor.

Counterclaim II alleges that IMRI has defaulted on its obligations to repay the promissory note, and Counterclaim III demands repayment of the $300,000 loan, plus interest. As discussed above, this Court finds that the $300,000 loan to IMRI is still outstanding and has not been forgiven, as alleged by IMRI. It is undisputed that IMRI has not made any payments on this loan, and therefore they are in default. As such, Counterclaims II and III are resolved in favor of the Defendant.

*C) Non-Maritime Liens*

There has been discussion by the parties of the possibility that Rumpel could have a non-maritime lien, possibly under state law, on the Vessel Victoria. However, it is clear that this issue is not properly before this Court. Neither party has sought a declaratory judgment, or any other form of relief, based on a non-maritime lien. Therefore, it is inappropriate for this Court to address that issue further. This Court expresses no opinion on the existence of such a lien in this case, nor whether it is even possible under the law to have a non-maritime lien on a Federally documented vessel.

### III. Conclusion

Accordingly, it is

**ORDERED** that judgment shall be entered in favor of Defendant in the amount of $300,000 plus pre-judgment interest at the legal rate from June 6, 2005, until the date of this judgment.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on January 29, 2007.

GREGORY A. PRESNELL  
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party